**In re COMMITMENT OF Nelton Eugene MYERS.**

No. 09–10–00507–CV.

Court of Appeals of Texas, Beaumont.

Submitted: July 11, 2011.

Decided: Aug. 25, 2011.

Dina F. Hardwick, State Counsel for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Nelton Eugene Myers challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001–.150 (West 2010). He argues that the trial court erred in the sub-

mission of the jury charge. He also asserts that the evidence is insufficient to prove that he is a sexually violent predator, or that he would engage in a predatory act for the primary purpose of victimization. We conclude that the evidence is sufficient, and that any error in the jury charge did not result in an improper judgment or prevent the proper presentation of the appeal. The trial court's judgment is affirmed.

### THE STATUTE

The Texas Legislature set out the purpose for the Civil Commitment of Sexually Violent Predator Act in legislative findings, as follows:

The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state. *Id.* § 841.001 (footnotes omitted). The statute sets forth a civil commitment procedure for the supervision and treatment of sexually violent predators. *See id.* §§ 841.001–.150.

The State must prove beyond a reasonable doubt that the person to be committed is a sexually violent predator. *Id.* § 841.062(a). A person is a "sexually violent predator" if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). " 'Behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). " 'Predatory act' means an act directed toward individuals, including family members, for the primary purpose of victimization." *Id.* § 841.002(5).

## THE EVIDENCE

The State introduced, without objection, two pen packets. They contained judgments showing that Myers had pleaded guilty to and been convicted of indecency with a child and aggravated sexual assault. Myers admits these convictions.

The jury heard that Myers was sent to a state school as a juvenile for the attempted rape of his mother. He admits to having difficulty controlling his temper, having been addicted to alcohol, and being sexually attracted to sixteen-year-old children. The jury heard portions of Myers's deposition in which he said he was attracted to seven and eight-year-old girls. He said that he liked fifteen-year-olds, but with sixteen-year-olds you get less prison time.

Myers said that he hears voices telling him to hurt people and that he will not get into trouble for it. The voices also tell him to sexually assault people. The voices told him to sexually assault the victims.

Myers said that he stabbed his stepfather in the leg, but the stepfather never hit him because Myers was too violent. Myers admits to fights and thefts spanning from his pre-teen years until he was expelled from high school at the age of seventeen. Throughout Myers's adult life, he has repeatedly been released from prison on parole or mandatory supervision and repeatedly violated the terms of those releases. He has convictions for unauthorized use of a motor vehicle and aggravated sexual assault that occurred while he was on supervision.

Myers admits to having a drinking problem. He said that he was drunk when he sexually assaulted two children. Myers has attended AA, but has never had any formal treatment for his alcohol abuse. Myers also admits to long-term marijuana use. He said that he was smoking marijuana when he committed his sexual offenses. He has had no drug treatment.

Timothy Proctor testified for the State. Dr. Proctor is a licensed psychologist and a licensed sex offender treatment provider. He is board-certified in forensic psychology. He described "behavioral abnormality" as a legal term meaning a congenital or acquired condition that predisposes a person to commit sexual acts of violence to such an extent that it makes them a menace to the health and safety of others.

In evaluating whether Myers suffers from a behavioral abnormality, Dr. Proctor utilized a methodology consistent with the methodology used by other experts in his field: he first reviews a packet of records, he then meets with the individual to be evaluated, and then he completes some specific measures. Based on Dr. Proctor's education, training, experience, and the procedures and methodologies he employed in this case, he arrived at the opinion that Myers has a behavioral abnormality.

Dr. Proctor explained that the details of past offenses are critical to evaluate in determining risk, sexual interests, sexual deviancy, and personality characteristics. Myers's first sexual offense occurred in 1978 when he was fifteen years old. He was prosecuted in the juvenile system for the attempted rape of his mother. According to the records, Myers held a knife to his mother's throat and undressed her before his stepfather came in and stopped him. Myers was sent to a juvenile detention facility for this offense.

The second sexual offense occurred three years later. Myers lured a child into an apartment to give her a Coke. Myers gave a statement to police near the time of the offense. The statement said that the little girl came on to him. Myers pleaded guilty to that offense and received a four-year prison term.

Myers was released from prison on mandatory supervision, but violated the terms by committing unauthorized use of a motor vehicle. He was returned to prison, but then released again. While on mandatory supervision this time, Myers was arrested for driving while intoxicated and aggravated sexual assault.

The third sexual offense was in 1986. The child was seven years old. On more than one occasion, Myers sexually assaulted this child. Myers pleaded guilty to aggravated sexual assault and was sentenced to thirty years in prison.

Myers related other instances of sexual abuse for which he was never prosecuted. He said that he lured a young girl into a bathroom at a park and raped her. He reported having sex with his sixteen-year-old half sister.

Dr. Proctor pointed out that the instances of sexual misconduct show a sexual attraction to prepubescent children and a history of indiscriminate and impulsive sex. Myers told Dr. Proctor that he fantasized about children. Myers said that he stopped fantasizing about children one month before visiting with Dr. Proctor because of Myers's concern over the civil commitment.

Dr. Proctor also considers Myers's nonsexual criminal history relevant to the behavioral abnormality inquiry. The doctor explained that it shows an antisocial lifestyle. Myers has a history of assault, truancy, and theft going back to his preteen years. This antisocial pattern has continued throughout Myers's adult life: every time he is released from prison he violates the terms of his release. Even the technical violations of release are significant because the point of release is to supervise a person so that they do not break the rules. While being closely monitored, Myers does not comply. When Myers is incarcerated, which is designed to keep people from acting out, he has major rule violations.

Dr. Proctor diagnosed Myers with pedophilia, nonexclusive type, attracted to females. He also diagnosed Myers with alcohol abuse. Dr. Proctor explained that Myers has an IQ in the 60s, he is mildly mentally retarded, and falls in the bottom two to three percent of society in terms of intelligence. The doctor also diagnosed Myers with antisocial personality disorder. Like pedophilia, this disorder can sometimes be managed or treated over time, but cannot be cured.

Dr. Proctor explained that although very few people with mental retardation would be classified as having a behavioral abnormality, in Myers's case his retardation comes into play in terms of risk assessment. Myers's "limited intelligence certainly increases his risk and impacts his problems in following the law." When asked to summarize the "diagnostic cluster" of Myers, Dr. Proctor said that Myers

had low intelligence, was prone to breaking rules, was prone to feeling an impulse and acting on it, and his impulses included acting out on his sexually deviant fantasies about children.

The risk factors Dr. Proctor saw for Myers were his sexual deviance, a history of antisocial lifestyle, his low intellectual functioning, his lack of a long-term live-in relationship, multiple sex offense convictions, having a stranger as a victim, having an unrelated victim, his multiple failures on supervision, using force in his sexual offenses, performing multiple sex acts on a single victim during a single instance, history of offending against multiple age groups, the juvenile antisocial history, the alcohol and drug abuse and lack of treatment for them, his poor adjustment to prison, and his lack of sex offender treatment. The protective factors Dr. Proctor saw were Myers's age and the possible lack of a male victim. Dr. Proctor used the Static–99, the Static–99–R, and the MnSOST–R as part of his evaluation of Myers. On two of them Myers scored in the high-risk range, on the other he fell into the moderate high range. Dr. Proctor believes that Myers is in the high risk range. The expert said that, in his opinion, Myers has a behavioral abnormality that predisposes him to commit a predatory act of sexual violence.

David Self testified for the State. Dr. Self is a medical doctor who is board certified in psychiatry and neurology. He has practiced forensic psychiatry since 1995. He visits with the individual to be evaluated. His evaluation in this case was conducted in accordance with his psychiatric training and in accordance with the accepted standards in his field.

The doctor explained that the records review is important because it is necessary for him to have a "longitudinal view" of the person. A valid diagnosis cannot be made based solely on what is in front of the evaluator at one point in time. Based on Dr. Self's education, training, experience, and the procedures that he used in this case, he came to the opinion that Myers has a behavioral abnormality.

He knew of Myers's low intellectual functioning before the interview, and so he structured his interview to accommodate that. He asked simple questions, used simple language, and checked to see if what he was asking was getting through or not.

When Dr. Self met with Myers and asked questions regarding the sex offense convictions that had child victims, Myers denied committing the offenses. When asked about one offense, Myers said he was urinating in public, the child saw him and her mother called the police. At the time of the offense, Myers told the police that the four-year-old girl enticed him.

Myers also denied another sexual assault. He told Dr. Self that the child's mother told her to join them in sex and Myers put his clothes on and left. Dr. Self told the jury in some places in the records, Myers indicated that he had sexually assaulted the girl and that she had liked it. Dr. Self explained the inconsistencies in Myers's statements by telling the jury that Myers is not a very good liar and that he is a poor historian.

Dr. Self asked Myers if he liked little girls before they went through puberty and he said, "yeah, I do, if I didn't get in trouble for it." Dr. Self described that Myers "lit up like a Jack–O–Lantern when he told me that."

The doctor diagnosed Myers with pedophilia which has been going on for years and is current. Pedophilia intensifies over time. He also diagnosed Myers with antisocial personality disorder, a chronic, stable pattern of disregard for the rights of

others and for the rules and laws of society. Dr. Self said that the research showed that pedophilia and antisocial personality disorder are "the two biggies" in a behavioral abnormality. As to Myers, Dr. Self explained that "there is very little question that he's a pedophile. There's very little question that he tolerates a criminal lifestyle and that these two together constitute a severe behavioral abnormality."

Myers was also diagnosed with alcohol abuse or dependence. Dr. Self described the alcohol as a disinhibitor. Dr. Self diagnosed Myers with mild mental retardation and psychosis not otherwise specified. Although Myers told the doctor that the voices told him to sexually assault children, the doctor said that was "highly uncharacteristic of what happens with hallucinatory activity and it sounds more like a convenient excuse." At the conclusion of his evaluation, Dr. Self formed the opinion that Myers has a congenital or acquired condition that by affecting his emotional or volitional capacity predisposes him to commit predatory acts of sexual violence.

Anna Shursen testified for Myers. Dr. Shursen is a licensed professional counselor and a licensed sex offender treatment provider. She performed a mental status examination of Myers. Dr. Shursen told the jury that Myers is not a good source of information: he is very disorganized and extremely contradictory. It is her opinion that Myers's mental status affects his ability to understand a question and his ability to respond to a question. She believes that Myers gives responses he believes his questioner wants to hear. His responses are often detrimental to him.

Dr. Shursen did not evaluate whether Myers understood the questions he was posed during his deposition, or during his interviews with Dr. Proctor or Dr. Self. Her experience with him was that he did not understand what he was saying. Dr. Shursen did not express an opinion as to whether Myers has a behavioral abnormality.

### The Jury Charge

■ The jury found "beyond a reasonable doubt that Nelton Eugene Myers suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence[.]" "Behavioral abnormality" was defined for the jury as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." In Myers's first issue, he argues the trial court erred in not asking the jury directly whether he was a sexually violent predator.

■ A litigant is entitled to a single submission of a controlling fact question. *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 718 (Tex.1995). A requested question already in the charge may be refused by a trial court. *See Goolsbee v. Texas & New Orleans R.R. Co.*, 150 Tex. 528, 243 S.W.2d 386, 388 (1951); *see also Guthrie v. Sinclair Ref. Co.*, 320 S.W.2d 396, 403 (Tex.Civ.App.-Houston 1959, writ ref'd n.r.e.). When a case is governed by a statute, the jury charge should track the language of the statutory provision as closely as possible. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994).

Myers argues that, to track the statute, the question submitted to the jury should have been: "Do you find beyond a reasonable doubt that Nelton Eugene Myers is a sexually violent predator?" Myers argues further that the "trial judge should have then provided the jury with the definitions

necessary to understand what the statute means by 'sexually violent predator[.]' "

In prior cases reviewed by this Court, the controlling question has been submitted to the jury in one of two forms. In earlier cases, the jury was asked "Do you find that [respondent] suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence[,]" and the statutory terms were then defined as in the statute. *See, e.g., In re Commitment of Almaguer,* 117 S.W.3d 500 (Tex.App.-Beaumont 2003, pet. denied). In more recent cases, the question was modified to substitute the word "predisposes" for "likely," and the same statutory terms were defined. *See, e.g., In re Commitment of Tolleson,* No. 09–08–00338–CV, 2009 WL 1474730, 2009 Tex. App. LEXIS 3660 (Tex.App.-Beaumont May 28, 2009, no pet.) (mem. op.). At the charge conference in this case, the trial court reacted to Myers's argument that the word "likely" is necessary to closely track the statute as follows:

> The Court: Your office was the one that wanted that word "predisposed" in there.
>
> [Myers's counsel]: I heard that, Your Honor, and whoever that person was, we—we need to talk one day, because—
>
> The Court: You should get him in the room.
>
> [Myers's counsel]: Yes. Yes. Because—
>
> The Court: Because you actually want—
>
> [Myers's counsel]: We want—
>
> The Court: Judge [ ] changed it. And the Court of Appeals affirmed it.

The issue raised in this appeal has not been addressed directly by this Court. The Court has treated the two forms of submission similarly in the past. Including the word "likely" in the charge submitted to the jury makes explicit what could be considered implicit in the definition of behavioral abnormality. For example, in *In re Commitment of Johnson,* No. 09–08–00489–CV, 2009 WL 2973109, 2009 Tex. App. LEXIS 7330 (Tex.App.-Beaumont, Sep. 17, 2009, no pet.) (mem. op.), the record in that case reveals that the question was phrased as it was in this case, and we stated in the opinion that the jury had found respondent suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence.[1] We concluded that "a rational jury could have found beyond a reasonable doubt that Johnson suffers from a behavioral abnormality that predisposes him to commit a sexually violent offense." *Id.* at *8.

In an earlier "likely" submission case, the Austin Court of Appeals while discussing the statute stated:

> The statute requires commitment to be based on a finding that the person is a sexually violent predator, which means that the person both has a behavioral abnormality—i.e., a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of others—and has either been convicted, or found not guilty by reason of insanity, of two or more sexually violent offenses.

*In re Commitment of Browning,* 113 S.W.3d 851, 860 (Tex.App.-Austin 2003, pet. denied). The Court further explained that "[a] finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health

---

1. This Court may take judicial notice of its own records. *Moore v. Zeller,* 153 S.W.3d 262, 264 (Tex.App.-Beaumont 2004, pet. denied).

and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.' " *Id.* at 863.

Nevertheless, although we have never required the controlling question to be submitted in this form, we are persuaded that, to more closely track the statute and to make jury submissions under the statute uniform, the question should be phrased as the State Counsel for Offenders now argues, "Do you find beyond a reasonable doubt that [Respondent] is a sexually violent predator?" *See* Tex. Health & Safety Code Ann. § 841.062(a). The charge should include the applicable statutory definitions of the statutorily defined terms.

■ We also will consider whether the trial court's failure to precisely track the statutory language requires a reversal of the judgment on the record in this case. *See* Tex.R.App. P. 44.1. Rule 278 provides that "[a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex.R. Civ. P. 278. Rule 44 of the appellate rules provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R.App. P. 44.1(a).

Myers testified that he needed sex offender treatment because he has sexually assaulted children. He testified that he hears voices telling him to sexually assault somebody. He testified he is attracted to seven to eight-year-old girls. The expert he called to testify on his own behalf, Dr. Shursen, testified "I don't think that he's lying. I think he's just talking, and he's giving you answers that he thinks you would like to hear." She did not evaluate whether he understood what he said to Dr. Self and Dr. Proctor. She did not evaluate whether he had a behavioral abnormality, and she did not offer an opinion to the jury on that question. Essentially, Dr. Proctor and Dr. Self testified that Myers met the requirements for commitment. In closing argument to the jury, Myers's counsel argued that the jury should have a reasonable doubt because Dr. Self and Dr. Proctor based their opinions "mostly on self-reports of Mr. Myers," and "Dr. Shursen told you that Mr. Myers wants to be liked and he will say what people want to hear." Myers's argument was that the jury should not rely on what Myers said. The jury's verdict demonstrates a rejection of that argument.

■ A reasonable juror could conclude that Myers's admissions were true. On the record in this case a reasonable juror, who found that Myers suffers from a behavioral abnormality so grave that he has become a menace to the health and safety of another person, would have no reasonable doubt as to whether Myers would likely reoffend if not committed. Implicit in the jury's finding is that he will. Nothing in the record in this case suggests that if the jury charge had employed the term "sexually violent predator" or "likely" the jury would have said "no." *See Reinhart v. Young,* 906 S.W.2d 471, 473 (Tex.1995). Generally, error in the submission of the question is harmless when the answer to the question submitted is sufficient to support the judgment. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980). As the Austin Court explained, "[a] person is committed under the act because he has a behavioral abnormality affecting his emotional or voli-

tional capacity that makes it difficult for him to control his propensity to commit acts of sexual violence." *In re Commitment of Browning,* 113 S.W.3d at 861. On this record, we conclude the jury's answer to the submitted question is sufficient to support the trial court's judgment and commitment order. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001) (examine the entire record). We cannot conclude in this case that the asserted error "probably caused the rendition of an improper judgment." *See* Tex. R.App. P. 44.1(a). Issue one is therefore overruled.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Myers argues the trial court erred by failing to grant his motion for directed verdict and motion for new trial because the evidence was legally and factually insufficient to prove beyond a reasonable doubt that Myers is a "sexually violent predator" or that he would engage in a predatory act "for the primary purpose of victimization." Because the statute employs a beyond-a-reasonable-doubt burden of proof, when reviewing the legal sufficiency of the evidence, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the statute. *In re Commitment of Mullens,* 92 S.W.3d 881, 885 (Tex.App.-Beaumont 2002, pet. denied). It is the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. In reviewing the factual sufficiency of the evidence in a civil case where the burden of proof is beyond a reasonable doubt, an appellate court weighs the evidence to determine whether a verdict that is supported by legally sufficient evidence

nevertheless reflects a risk of injustice that compels ordering a new trial. *In re Commitment of Day,* 342 S.W.3d 193, 213 (Tex.App.-Beaumont 2011, pet. denied).

In addition to the experts' opinions, the jury heard evidence of Myers's criminal history, substance abuse history, antisocial personality disorder and pedophilia, actuarial test scores, risk factors, inability to control his behavior, and his admitted attraction to children. The jury's verdict is supported by sufficient evidence. *See In re Commitment of Almaguer,* 117 S.W.3d at 505–06; *see also In re Commitment of Bailey,* No. 09–09–00353–CV, 2010 WL 3259987, at *4–6, 2010 Tex.App. LEXIS 6685, at **12–14 (Tex.App.-Beaumont Aug. 19, 2010, no pet.) (mem. op.); *In re Commitment of Grinstead,* No. 09–07–00412–CV, 2008 WL 5501164, at *5–6, 2009 Tex. App. LEXIS 228, at *16 (Tex.App.-Beaumont Jan. 15, 2009, no pet.) (mem. op.). We see nothing in the record that compels the granting of a new trial. Issue two is overruled. The judgment is affirmed.

AFFIRMED.