**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00658-CV**

_____

**IN RE COMMITMENT OF WILLIAM ERNEST WASHINGTON**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-05-05226-CV**

**MEMORANDUM OPINION**

The State of Texas filed a petition to civilly commit William Earnest Washington as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). A jury found Washington suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003. The trial court entered a final judgment and an order of civil commitment under the Act. We affirm the judgment of the trial court.

1

Washington raises four issues on appeal. Washington argues that the Texas Supreme Court's recent construction of the SVP statute renders the statute facially unconstitutional under the Fourteenth Amendment, the trial court erred by allowing testimony regarding the details of the underlying offenses in violation of Texas Rule of Evidence 705(d), and the evidence is legally and factually insufficient to support the judgment.

## I.   CONSTITUTIONAL CHALLENGE

In his first issue, Washington contends that in *In re Commitment of Bohannan* the Texas Supreme Court construed the SVP statute in a manner that "eliminated the requirement of a mental illness[.]"   *See generally In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012) (addressing the relevance of a "medical diagnosis" in determining whether a person is a sexually violent predator under the statute). Washington argues that the Supreme Court's construction of the SVP statute renders the statute "facially unconstitutional" under the Fourteenth Amendment's due process clause.  We disagree with Washington's reading of the Texas Supreme Court's decision in *Bohannan*.  In *In re Commitment of Anderson*, we recently stated "[w]e do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator."  *In re Commitment of*

2

*Anderson*, 392 S.W.3d 878, 886 (Tex. App.—Beaumont 2013, pet. denied). We recognized that the Supreme Court in *Bohannan* did not "change the statute or render it unconstitutional." *Id*. at 885. We overrule Washington's first issue.

## II.    ADMISSION OF EVIDENCE

In his second issue, Washington argues that the trial court erred in allowing testimony regarding the details of Washington's underlying offenses to be admitted into evidence. Washington contends that the facts regarding his past offenses do not have "any bearing on whether [he] suffers from a behavioral abnormality[,]" and were used instead to inflame the jury.

The admission of evidence is reviewed under an abuse of discretion standard. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re Commitment of Salazar*, No. 09-07-345 CV, 2008 WL 4998273, at *2 (Tex. App.—Beaumont Nov. 26, 2008, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A judgment will not be reversed based on the admission of evidence unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an

improper judgment. *Salazar*, 2008 WL 4998273, at \*2; *see also* Tex. R. App. P. 44.1 (a).

Under Rule 705 of the Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data on which he bases his opinion. Tex. R. Evid. 705(a); *In re Commitment of Yaw*, No. 09-08-042 CV, 2008 WL 5096511, at \*1 (Tex. App.—Beaumont Dec. 4, 2008, no pet.) (mem. op.). Rule 705(d) provides as follows:

> When the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial. If otherwise inadmissible facts or data are disclosed before the jury, a limiting instruction by the court shall be given upon request.

Tex. R. Evid. 705(d). "When an expert relies upon hearsay in forming his opinion, and it is of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." *Salazar*, 2008 WL 4998273, at \*4.

Dr. Antoinette McGarrahan, a forensic psychologist, testified for the State. Dr. McGarrahan explained that the facts related to Washington's past offenses were relevant to her determination of whether Washington has a behavioral abnormality. She stated that information contained in the records relating to past behavior is generally relied upon by experts in her field in making these types of

4

determinations. Dr. McGarrahan testified regarding Washington's criminal history and the facts related to his sexual and non-sexual offenses. She considered the details of Washington's offenses as part of a "behavior pattern" that was relevant to her determination of whether he has a behavioral abnormality.

The State's forensic psychiatrist, Dr. David Self, briefly testified to the facts related to Washington's offenses. Like Dr. McGarrahan, Dr. Self testified that historical information, such as the information found in Washington's records, is important in determining how a behavioral issue has presented itself over the course of a lifetime, across different environments. Dr. Self considered Washington's past criminal history, including both convictions and non-conviction offenses, in reaching his opinion. Dr. Self testified regarding facts related to Washington's sexual offenses that he found relevant in his analysis and explained that these facts showed a "stark pattern," such as the fact that all the victims were adolescent girls approximately fifteen years of age, that Washington frequented school grounds and places where there were adolescent children, and that he had a habit of portraying himself as an adolescent even into his mid-twenties.

Washington objected to the introduction of any testimony from the records as hearsay, and argued that the prejudicial nature of that evidence substantially outweighed its probative value. At Washington's request, the trial court gave the

5

jury a limiting instruction during Dr. McGarrahan's testimony.  The trial court instructed the jury that "hearsay is normally not admissible.  However, certain information obtained in records and reviewed by experts is allowed into evidence through the expert's testimony[,]" and  "is admitted for the purpose of showing the basis of the expert's opinion."  The trial court provided a virtually identical limiting instruction during Dr. Self's testimony.  The trial court provided an additional limiting instruction in the jury charge, wherein the court stated that hearsay information contained in the records reviewed by the experts and admitted before the jury "was admitted only for the purpose of showing the basis of the experts' opinion[s] and cannot be considered as evidence to prove the truth of the matter asserted."

Trial courts have the discretion to admit the underlying facts or data on which the expert has based his opinion.  *See* Tex. R. Evid. 705(d); *Boswell v. Brazos Elec. Power Coop., Inc.*, 910 S.W.2d 593, 602 (Tex. App.—Fort Worth 1995, writ denied).  Washington did not object to the trial court's limiting instructions, nor did he request different or additional instructions at the time the limiting instructions were given. Further, Washington did not object to the limiting instruction contained in the jury charge.

6

We conclude the trial court properly applied Rule 705(d) by providing the jury with limiting instructions. *See* Tex. R. Evid. 705(d). We presume the jury followed the court's limiting instructions. *See Day*, 342 S.W.3d at 199; *Yaw*, 2008 WL 5096511, at *3 (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982)). Additionally, the trial court could have reasonably concluded that the evidence at issue would help the jury understand how the State's experts formed their opinions that Washington suffers from a behavioral abnormality. Both experts explained the facts they considered in forming their opinions and how those facts influenced their opinions. Considering the purpose for which the facts related to Washington's offenses were admitted into evidence, the trial court could have reasonably concluded that this evidence was not unfairly prejudicial. *See In re Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at *2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *Day*, 342 S.W.3d at 199. We overrule Washington's second issue.

### III.    SUFFFICIENCY OF THE EVIDENCE

In issues three and four, Washington argues that the evidence is legally and factually insufficient to support a finding that Washington suffers from a behavioral abnormality.

## A. Applicable Law

Under the SVP statute, the State must prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a). The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). The statute defines "'behavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2).

Because the SVP statute employs a beyond-a-reasonable-doubt burden of proof, when reviewing the legal sufficiency of the evidence, we must assess all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied); *In re Commitment of Myers*, 350 S.W.3d 122, 130 (Tex. App.—Beaumont 2011, pet. denied). It is the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Mullens*, 92 S.W.3d at 887; *Myers*, 350 S.W.3d at 130. In reviewing the factual sufficiency of the evidence in an SVP commitment case, we must weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *Day*, 342 S.W.3d at 213; *Myers*, 350 S.W.3d at 130.

## B. The Testimony

Dr. McGarrahan testified that in addition to reviewing over 1800 pages of records, she met with Washington for approximately two and a half hours. Dr. McGarrahan stated that her evaluation and interview were conducted in accordance with her training as a psychologist and accepted standards in the field of psychology. She testified regarding Washington's lengthy criminal history and sexual offenses he committed against four different girls when each girl was approximately fifteen years old.

Dr. McGarrahan told the jury that the record contained evidence that when Washington was twenty-four years old he impregnated a fifteen-year-old girl after engaging in a sexual relationship with her for several months. Washington was not prosecuted for this offense. Later Washington was charged with sexual assault of a child, indecency with a child, and injury to a child for an incident that occurred

9

with another fifteen-year-old girl. Though he was twenty-five years old at the time, Washington told the victim he was nineteen. Washington was on probation for credit card abuse at the time of this offense. Washington pled guilty to injury to a child, and the other counts were dismissed. He was sentenced to two years in prison but received shock probation. He served six months and was released on probation. While on probation for credit card abuse, Washington was also charged with aggravated robbery. However this charge was dismissed in lieu of his conviction for injury to a child.

At age twenty-seven, Washington was charged with four counts of sexual assault against a third victim, another fifteen-year-old girl. He was on probation at that time for his prior conviction of injury to a child. The records related to this offense indicate that Washington picked up the victim and a friend and offered to take them to McDonalds. Instead Washington took the girls to his house where "he made them drink several shots of alcohol" and sexually assaulted one of them. Dr. McGarrahan testified that according to the records the girls alleged that "the door was locked on the inside with a key[,]" which prevented them from leaving until Washington fell asleep and they were able to locate the key. The third victim's mother did not bring charges against Washington until he was arrested for sexual assault against a fourth fifteen-year-old girl. The fourth victim alleged that

10

Washington gave her alcohol and prescription pills and then raped her. Washington pled guilty to one count of sexual assault and was sentenced to ten years confinement. Washington also pled guilty to one count of sexual assault of a child for the offense committed against his third victim and was also sentenced to ten years confinement in that case. Dr. McGarrahan further testified that the records indicated there were four additional high school girls who made sexual assault complaints against Washington; however, these complaints did not result in convictions. Dr. McGarrahan testified that the evidence in the record established that Washington "was perusing the five local high schools to pick up these young girls."

Dr. McGarrahan also testified regarding Washington's behavior problems in prison. Dr. McGarrahan discussed disciplinaries Washington received in prison, and explained that Washington received several for attempting to establish inappropriate relationships with female guards and two for sexual misconduct. Dr. McGarrahan explained that this is evidence of Washington's "difficulty establishing boundaries." In addition to reviewing records and meeting with Washington, Dr. McGarrahan performed actuarial tests on Washington. She testified that actuarial tests look "at characteristics of the individual that [have] been proven to be risk factors" for re-offense. On the Static-99, Washington

11

scored a six, which puts him in a high risk category for engaging in sexual violent offenses in the future. On the Minnesota Sex Offender Screening Tool-Revised, Washington scored a ten, which also corresponds to a high level of risk for engaging in a sexually violent offense after release. On the HARE psychology checklist, Washington scored a 31, which indicates a very high level of psychopathic characteristics.

According to Dr. McGarrahan, Washington "has a great deal of sexual deviancy[,]" and a "significant degree of psychopathy . . . that allows him to violate the rights of others easily and not feel bad about it." Dr. McGarrahan stated that Washington's sexual deviancy and psychopathy is untreated. Dr. McGarrahan noted that just a few months before trial Washington was disciplined for following around a female officer, trying to talk to her. She testified that Washington has difficulty controlling his impulses, difficulty making good decisions, and that he has not learned from the consequences of his actions. Dr. McGarrahan told the jury that Washington's sexual deviancy, combined with his psychopathic characteristics, put Washington at a high risk to engage in sexually-violent behavior after his release. Dr. McGarrahan testified that using the definition of behavioral abnormality as defined by the statute, it is her opinion that Washington

has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence when he is released.

Like Dr. McGarrahan, Dr. Self also testified that the records indicated that Washington frequented school grounds and other places where young girls gathered, and that he had a habit of portraying himself as an adolescent even into his mid-twenties. All of Washington's victims were young adolescent girls, approximately fifteen years of age, and he exhibited a pattern of trying to seduce them by intoxication. Dr. Self discussed Washington's psychopathic characteristics and his poor institutional adjustment. Like Dr. McGarrahan, Dr. Self acknowledged that Washington's disciplinary cases for attempting to establish inappropriate relationships with female officers show a continuing problem with boundaries. Dr. Self also testified that committing offenses while on supervised release evidences a low level of self control.

Dr. Self testified that he diagnosed Washington with paraphilia not otherwise specified with antisocial, narcissistic, and psychopathic traits. Dr. Self explained these diagnoses to the jury and agreed that these conditions do not "spontaneously [go] away." Dr. Self testified that Washington is "in a group that's at a pretty high risk" to reoffend. Dr. Self also testified that in his opinion,

13

Washington has a behavioral abnormality as defined by the Texas Health and Safety Code.

The State also called Washington as a witness at trial. Washington told the jury that he does not need sex offender treatment and that he has been treating himself for the last nine and a half years.

## C. Analysis

"[P]roof of serious difficulty in controlling behavior" is required in order to civilly commit a defendant under a SVP statute. *See Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002). The inability to control behavior "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id*. Washington asserts that "[t]he only evidence the State presented at trial that [he] currently has either a 'condition' or serious difficulty controlling his behavior was conclusory expert testimony." Washington further contends the State's experts did not offer a basis supporting their opinions that Washington currently has a "condition" or serious difficulty controlling his behavior. We disagree.

Serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and the experts' testimony. *In re Commitment of*

*Mosqueda*, No. 09-10-00540-CV, 2011 WL 5988361, at *1 (Tex. App.—Beaumont Dec. 1, 2011, no pet.) (mem. op.); *see also In re Commitment of Martinez*, No. 09-05-493-CV, 2006 WL 2439752, at *4 (Tex. App.—Beaumont Aug. 24, 2006, no pet.) (mem. op.). The record contains evidence that Washington sexually assaulted at least four adolescent girls, and there are potentially four other adolescent victims. Many of Washington's offenses were committed while he was under supervision while on probation for prior offenses. Both experts testified that Washington exhibited a pattern in the commission of his offenses. Both experts discussed Washington's sexual deviancy and psychopathic characteristics. Dr. McGarrahan specifically testified that Washington's "sexual deviancy remains current, that his psychopathy or psychopathic characteristics remain current, that he hasn't learned from negative consequences that come about from [his] behaviors[.]" Dr. Self testified that he diagnosed Washington with paraphilia not otherwise specified, non-consenting adolescents, and personality disorder, not otherwise specified with antisocial, narcissistic, and psychopathic traits. Dr. Self opined that Washington's sexual deviancy was "not going to go away," and, at most, with treatment Washington could "learn to avoid the circumstances that make it likely for him to offend and given him strategies to avoid it."

15

In addition, both experts testified regarding the disciplinaries Washington received in prison for attempting to establish inappropriate relationships, as well as his sexual misconduct. The jury heard testimony concerning Washington's risk factors, actuarial test scores, criminal history, diagnoses, repeated sexual offenses, and his continued issues recognizing and establishing appropriate boundaries while in prison. The record established that Washington has never undergone sex offender treatment, nor does he believe he needs treatment. Both experts testified in their opinion, Washington has a behavioral abnormality that affects his emotional or volitional capacity.

We conclude that both experts presented evidence-based support for their opinions. *See Day*, 342 S.W.3d at 206. In addition, the State submitted proof during the trial that Washington has serious difficulty controlling his behavior. Viewing the evidence in the light most favorable to the jury's verdict, a rational jury could have found beyond a reasonable doubt that Washington has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887. In addition, weighing all the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. Accordingly, we overrule issues three and four.

Having overruled all of Washington's appellate issues, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 26, 2012
Opinion Delivered June 13, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.