In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00158-CV
_____


IN RE COMMITMENT OF WILLIAM RUDOLPH WALTERS

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-08-08649 CV

**MEMORANDUM OPINION**

The State of Texas filed a petition to civilly commit William Rudolph Walters (Walters) as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found Walters suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003 (West Supp. 2014). The trial court entered a final judgment and an order of civil commitment under the SVP statute. Walters filed a Motion for New Trial, which the trial court denied, and Walters appealed.

Walters raises three issues on appeal. In his first and second issues, he argues that the evidence is legally and factually insufficient to support a finding that he has a behavioral abnormality. In his third issue, he argues that this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 Tex. App. LEXIS 6974 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), renders Chapter 841 unconstitutional. We overrule all of his issues and affirm the judgment of the trial court.

THE SVP STATUTE

Under the SVP statute, the State bears the burden of proving beyond a reasonable doubt that the person it seeks to commit for treatment is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062 (West 2010). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West Supp. 2014). The statute defines "'[b]ehavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). Previously, we have stated that "[a] condition which affects either emotional capacity or volitional capacity to the

2

extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.— Beaumont 2003, pet. denied).

UNDERLYING FACTS

Walters was convicted in 1991 on two counts of aggravated sexual assault of a child. His victims were A.C., a six-year-old girl, and S.R., a six-year-old boy. Walters and his wife acted as babysitters for both children. Walters pleaded guilty to both counts, and he wrote a "Voluntary Statement" before his sentencing wherein he admits to and describes the details of his sexual assault of each child. At the same time, Walters also wrote a second "Voluntary Statement" wherein he admits to and describes the details of sexual conduct with three of his own children (boys who were ages four, five, and seven at the time of the conduct described in the statement). Walters was never charged for his sexual conduct with his own children; rather, his statement concerning his conduct with his own children was used by the State as corroborating evidence. Walters received two twenty-four-year sentences for his offenses against A.C. and S.R., each to run concurrently.

At Walters' civil commitment trial, the State read Walters' responses to Requests for Admissions into the record. Therein, Walters admitted, among other things, that he knew it was wrong to sexually offend against his victims, but he did

3

it anyway. He admitted that his victim A.C. was six years old and that he touched her genitalia. He also admitted his other victim S.R. was six years old.

The State also offered Walters' penitentiary packets into evidence, which included both of Walters' Voluntary Statements. His Voluntary Statement concerning the offenses for which he was convicted stated the details of his sexual assaults, and it included admissions regarding multiple occasions wherein he committed offenses against A.C. and an admission as to his assault on S.R. In his Voluntary Statement concerning his sexual conduct with his three boys, he stated that he had the young boys perform oral sex on him on multiple occasions. In both of his Voluntary Statements, Walters stated that his wife was in the house or nearby during many of the incidents. In his testimony at his civil commitment trial, he admitted to one sexual assault with A.C., but he denied engaging in any sexual conduct with S.R., despite having pleaded guilty on that charge, and he denied that he was sexually attracted to children. He further denied that he sexually abused his sons, and he said he signed the Voluntary Statements concerning the offenses for which he was convicted and the unindicted sexual conduct with his own boys "under duress[.]" Dr. Sheri Gaines, the State's psychiatrist, explained that in Walters' deposition, Walters said "the police officer told him that he would never see his wife and sons again if he didn't sign" the statements. Dr. Gaines also

testified that Walters told her he signed the Voluntary Statements "as part of his plea."

Walters testified that while in high school he stole some money from a school classroom. He further agreed that he had anger problems and that he was also arrested for "injury to a child[]" that his wife was babysitting after the mother discovered a mark on the child's face in the shape of an adult handprint. The injury to a child charge was dropped when the mother and child did not appear in court. He agreed that, about two years following the alleged injury to a child, Child Protective Services (CPS) took his boys away and put them in foster homes because the boys were "having a hard time thriving and putting on weight[.]"

Walters testified that he received "about thirteen" disciplinaries in prison and four of the thirteen were "major[.]" He also testified that at first he had refused to be evaluated for the sex offender treatment program, but he currently was participating in a nine-month program. He stated "I do need this treatment, some counseling . . . to handle some minor problems I had growing up." He testified that he did not understand what "triggers" are and that he did not know why he committed his sex offenses. Walters stated that he believed he could safely be around children and that one of his goals was to spend time with his daughter and his grandchild.

Dr. Gaines, a medical doctor, board-certified in psychiatry, testified as an expert for the State. Dr. Gaines has practiced forensic psychiatry for twenty-five years. She testified that in assessing Walters, she used the methodology followed by experts doing this kind of evaluation in Texas. She interviewed Walters for about two hours; she also reviewed various records, including records from the sheriff's office, prison records, victim statements, Walters' Voluntary Statements, records from Walters' sex offender treatment, Walters' deposition, and an evaluation by a psychologist. She testified that Walters has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Gaines diagnosed Walters with pedophilic disorder, a sexual deviancy that involves children, and described him as having psychopathic traits. She regards pedophilia and psychopathic traits as two "big risk factors for repeating sex offending. . . . [or] recidivism." She testified that "[p]edophilia is known as a chronic condition. It can be attenuated under certain circumstances with time, with treatment." Dr. Gaines testified that "there is no evidence that Mr. Walters' pedophilic disorder has gone away." She regarded the details of his sexual convictions as demonstrating risk factors, including that he had multiple victims, performed multiple acts on the victims, and had both male and female victims who were not family members. Dr. Gaines noted that Walters' Voluntary Statements were "unlikely to be fabricated" because they contained "a lot of details[,]" and

6

that "when you're making up a story, . . . it is very hard to just come up with those kind of details unless it really happened." She regarded Walters' sexual offenses as "bold" in that he approached his victims at school, he approached his victims after already having been in trouble for his behavior, and he committed the offenses with his wife nearby and while CPS was already investigating the family situation. She explained this conduct was "bold" because it was "[h]ighly likely that he [could] get caught. But he was still unable to refrain from those behaviors." She testified that, in her interview with him, she saw Walters express no remorse or guilt for his offenses and that "he was portraying himself as the victim rather than portraying the children as the victims."

Dr. Gaines explained that Walters' psychopathic traits include denial, minimization, failing to accept responsibility, shallow affect, lack of remorse, lack of empathy, lack of insight, unstable and parasitic lifestyle, superficiality, and lying. She also explained other conduct supported the psychopathic traits, including his juvenile criminal history of stealing money, his criminal charge for injury to a child, and the lack of care he and his wife provided for their children that prompted CPS attention. She reported that Walters' score on the Hare PCL-R, a checklist for evaluating psychopathic traits, was "below the psychopathic range[]" and that Walters does not "rise to the level of being a full-blown psychopath," but he does have sexual deviancy and he has psychopathic traits. Dr.

7

Gaines testified that she and the psychologist who administered the checklist "both agree that [Walters has] a lot of psychopathic traits and we both agree that that is [a] risk factor[]."

Dr. Gaines testified that Walters had made "very little progress so far[]" in his sex offender treatment. She explained:

> Walters said that he would like to have treatment, but he said that he would like to have treatment to process his own despair, to process his own suffering. He gave some very general statements about how he could benefit from therapy, but nowhere did he say that he wants sex offender treatment so he can learn why he did what he did. Well, he does when directly asked. He doesn't volunteer that himself. He doesn't volunteer that he would like to learn more about himself and why he did this to these children. He doesn't understand triggers. He doesn't understand the cycle.

Dr. Gaines noted that based on Walters' experience thus far in the sex offender treatment program, Walters was "learning more slowly than most people[.]"

Dr. Gaines did find some positive risk factors for Walters, including that he is "getting older. He is 61 years old, and the literature does indicate that with older age the likelihood of reoffending goes down." She also reported that Walters' score on the Static-99R actuarial was "pretty low as far as a number for risk for recidivism." The defense provided no expert witness at the civil commitment trial.

LEGAL AND FACTUAL SUFFICIENCY

In his first issue on appeal, Walters argues that the evidence is legally insufficient to support a finding that he has a behavioral abnormality. And in his

8

second issue, Walters argues the evidence is factually insufficient to support a finding that he has a behavioral abnormality.

In SVP cases, the State must prove the elements of its case beyond a reasonable doubt. *See* Tex. Health & Safety Code Ann. § 841.062(a). Because the statute places upon the State the burden of proof employed in criminal law, this Court has adopted the appellate standard of review in criminal cases for legal sufficiency of the evidence. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In a legal sufficiency review, this court reviews all of the evidence in a light most favorable to the verdict." *Id*.

To prevail on his legal sufficiency issue, Walters is required to demonstrate that no evidence supports the jury's finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). "[W]hether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 133 S. Ct. 2746 (2013). We defer to the jury on matters of weight and credibility of the evidence in a challenge to legal sufficiency. *In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.— Beaumont 2011, pet. denied) (citing *Jackson*, 443 U.S. at 319).

9

The jury heard Dr. Gaines' testimony that Walters has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, as well as evidence of Walters' risk factors, sexual offenses, and diagnoses. The jury also heard Walters' testimony and admissions concerning his criminal history, and it had copies of the pen packets, which included copies of his Voluntary Statements. The jury was entitled to infer Walters' current dangerousness from the evidence presented, including Dr. Gaines' testimony, Walters' past behavior, Walters' own testimony, and the Voluntary Statements. *See In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 Tex. App. LEXIS 6714, at *14 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). As the sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Walters suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Lowe*, No. 09-14-00098-CV, 2014 Tex. App. LEXIS 10034, at *6 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (mem. op.); *see also Wilson*, 2009 Tex. App. LEXIS 6714, at *14; *Mullens*, 92 S.W.3d at 887.

Walters also argues that the evidence in this case is legally insufficient because the State "presented no evidence that the now 62-year-old Mr. Walters is likely to have any more children or that he is likely to come into contact with other children in his home after his release from prison." Walters provides no legal

support for this argument. *See* Tex. R. App. P. 38.1(i) (requiring an argument in an appellant brief to cite to legal authority); *see also Abdelnour v. Mid Nat'l Holdings, Inc.*, 190 S.W.3d 237, 241(Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Issues on appeal are waived if an appellant fails to support his contention by citations to appropriate authority[.]"). Walters argues that there is no evidence that he will have the future opportunity to come into contact with children, and that the State presented no evidence that Walters is "extremely dangerous." The statute requires the State to prove that Walters is a sexually violent predator as defined by the statute and that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a). Walters presented no evidence to the jury regarding his likelihood of coming into contact with children. Furthermore, whether or not Walters is or is not likely to have any more children or whether or not he is or is not likely to come into contact with children would only go to the weight of the overall evidence that a jury might consider. *See In re Commitment of King*, No. 09-13-00255-CV, 2014 Tex. App. LEXIS 724, at **9-13 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.) (the jury must decide whether a defendant has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence). Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Walters is a sexually violent predator. We

11

conclude that the evidence is legally sufficient to support the verdict. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Mullens*, 92 S.W.3d at 885-87. We overrule Walters' first issue on appeal.

With respect to his second issue, Walters contends that the evidence is factually insufficient to support the jury's verdict. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213.

The jury heard evidence regarding Walters' criminal history, including his sexual offenses and other criminal conduct. Dr. Gaines testified that Walters suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Gaines diagnosed Walters with pedophilia and psychopathic traits, and she also testified that pedophilia is a chronic condition. Dr. Gaines explained that Walters has several risk factors: pedophilia (a sexual deviance), psychopathic traits, two convictions for sexually violent offenses, lifestyle instability, and lack of insight or remorse.

The absence of expert testimony or other evidence that Walters "will have an opportunity to come into contact with children in his home" does not render the evidence factually insufficient to sustain the jury's finding that Walters is a sexually violent predator. The evidence supports the jury's finding that Walters

12

suffers from a behavioral abnormality that makes him likely to engage in a predatory act. In addition to the expert's opinion, the jury heard evidence of Walters' criminal record; his two aggravated sexual assaults to which he pleaded guilty, involving A.C., a six-year-old girl, and S.R., a six-year-old boy; and it received copies of the statements he signed about his charged and uncharged offenses, as well as evidence regarding his pedophilia and psychopathic traits. Given the record before us, we find no risk of injustice that would demand ordering a new trial. We conclude that the jury's verdict is supported by factually sufficient evidence. *See In re Commitment of Myers*, 350 S.W.3d 122, 130 (Tex. App.—Beaumont 2011, pet. denied) (citing *Almaguer*, 117 S.W.3d at 505-06). We overrule Walters' second issue.

### *IN RE COMMITMENT OF RICHARD*

In his third and final issue, Walters contends that this Court's decision in *In re Commitment of Richard*[1] renders Chapter 841 facially unconstitutional. We recently addressed and rejected this same argument. *See In re Commitment of*

---

[1]Walters complains that the ruling in *In re Commitment of Richard,* No. 09-13-00539-CV, 2014 Tex. App. LEXIS 6974 (Tex. App.—Beaumont June 26, 2014, pet. denied) (mem. op.), allows the civil commitment of a person who has not been diagnosed with any mental disorder or condition. But the record demonstrates that Walters was diagnosed by Dr. Gaines to have pedophilic disorder and psychopathic traits, and Dr. Gaines also concluded that Walters has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

13

*Lucero*, No. 09-14-00157-CV, 2015 Tex. App. LEXIS 1085 (Tex. App.—Beaumont Feb. 5, 2015, no pet. h.) (mem. op.). For the same reasons as outlined in *Lucero*, we overrule Walters' constitutional challenge and overrule issue three.

Having overruled all of Walters' issues, the judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered February 19, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

14