**OWENS–CORNING FIBERGLAS CORPORATION, Relator,**

v.

**The Honorable Neil CALDWELL, Judge 23rd Judicial District Court, Respondent.**

**No. D–0566.**

Supreme Court of Texas.

Nov. 6, 1991.

Rehearing Overruled Dec. 11, 1991.

Frank M. Bean, Elizabeth M. Thompson, Kevin F. Risley, Thomas W. Taylor, Houston, Laurence H. Tribe, Cambridge, Mass., Ruby Kless Sondock, Houston, for relator.

Lawrence Madeksho, Robert E. Ballard, Houston, for respondent.

## OPINION

COOK, Justice.

In this discovery mandamus, we consider the duration of the attorney work product privilege. Relator Owens–Corning Fiberglas Corporation was ordered by Respondent, the Honorable Neil Caldwell, to produce some 11,000 pages of documents which Owens–Corning alleges are privileged. Owens–Corning requested mandamus relief from this order of the trial court, and the court of appeals, without opinion, denied the motion for leave to file petition for writ of mandamus. We conditionally grant the writ.

Owens–Corning was sued in Brazoria County in two asbestos personal injury actions.[1] Discovery in these cases proceeded, and Owens–Corning, in response to the plaintiffs' requests, produced approximate-

---

1. *Tommie L. Heathman v. Owens–Corning Fiberglas Corp.,* No. 87–C–1934, and *Sherman A.* *Searls v. Owens–Corning Fiberglas Corp.,* No. 88–C–0615.

ly 35,700 pages of documents for which it claimed no privilege. Owens–Corning also identified some 11,000 pages of documents which it claimed were privileged under the attorney-client and work product privileges. Tex.R.Civ.Evid. 503; Tex.R.Civ.P. 166b(3). The plaintiffs filed motions to compel discovery of these documents, and Owens–Corning filed motions for protection in response.

The trial court's master in chancery conducted an *in camera* review of the claimed privileged documents. The master also held related hearings over a five-week period. At the conclusion of her *in camera* review, the master prepared reports containing her recommended disposition of the parties' motions. The master recommended that, of the 11,000 pages claimed privileged, the trial court exclude from discovery one page on the basis of the work product privilege. No other documents were recommended to be excluded on the basis of privilege. Ninety-seven pages were recommended for exclusion on the basis of irrelevance.

On October 18, 1990, the trial court issued an order which adopted the recommendations of the master in their entirety. The discovery order signed by the trial court included the following grounds for compelling production of the documents:

1. The documents were not prepared by attorneys or attorneys' agents as part of the defense of or in anticipation of the instant cases.

2. The assertion of a "state of the art" defense by Owens–Corning was an offensive use of the rules governing privilege and constituted a waiver of the privilege.

In seeking mandamus relief here, Owens–Corning argues that the trial court abused its discretion in ruling that work product from other cases was discoverable because it had not been generated specifically in defense of the instant cases.

In Texas, the procedural rule governing the work product privilege does not directly

address the question whether work product loses its protected status when it is requested to be produced in another case. The rule provides:

**Exemptions.** The following matters are protected from disclosure by privilege: (a) *Work Product.* The work product of an attorney, subject to the exceptions of Texas Rule of Civil Evidence 503(d) which shall govern as to work product as well as to attorney-client privilege.

Tex.R.Civ.P. 166b(3).

■ The primary purpose of the work product rule is to shelter the mental processes, conclusions, and legal theories of the attorney, providing a privileged area within which the lawyer can analyze and prepare his or her case. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 554 (Tex.1990); *Enos v. Baker,* 751 S.W.2d 946, 950 (Tex. App.—Houston [14th Dist.] 1988, orig. proceeding).[2] This underlying purpose would be totally defeated if the work product privilege were limited to documents that were prepared in the particular case for which discovery is sought.

One court of appeals has disregarded the underlying purpose of Rule 166b(3) by interpreting the rule as limiting the work product privilege to materials prepared for the suit in which discovery is sought. *De-Witt & Rearick, Inc. v. Ferguson,* 699 S.W.2d 692 (Tex.App.—El Paso 1985, orig. proceeding). The *DeWitt* court relied on *Allen v. Humphreys,* 559 S.W.2d 798 (Tex. 1977) for support for this limitation. That reliance was misplaced. *Allen v. Humphreys* did not concern the work product privilege, but only the investigative privilege and consulting expert privilege under the rules then in effect. While the court did state that the investigative privilege "can be invoked only where the document sought to be protected was prepared in connection with the prosecution or defense of the lawsuit in which the discovery is sought ...," 559 S.W.2d at 803, the court did not have before it the question of the duration of the work product privilege.

---

**2.** While an attorney must be allowed to work with a degree of privacy, the protection granted under the work product doctrine does not extend to facts the attorney may acquire. *See*

*Axelson,* 798 S.W.2d at 554, n. 8; *Leede Oil & Gas, Inc. v. McCorkle,* 789 S.W.2d 686, 687 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding.

Indications of the high degree of protection to be afforded the mental processes of an attorney exist in both the rules and our case law. For example, the rules contain a "substantial need" exception for materials privileged under the rules governing party communication and witness statement privileges, but no such exception exists for work product. *See* Tex.R.Civ.P. 166b(3)(e). As for case law, this court specifically pointed out in *Garcia v. Peeples*, 734 S.W.2d 343, 349 (Tex.1987) that "work product is not subject to trial court control."

Were the work product protection not continuing, a situation would result in which a client's communications to an attorney, which must be full, frank and open, are protected, Tex.R.Civ.Evid. 503, but the same attorney's work product done in furtherance of such attorney-client relationship is not. This anomaly clearly cannot be allowed.

Further, any party which is a repeat litigant [3] clearly must be allowed to develop an overall legal strategy for all the cases in which it is involved. This is true whether the litigant is a corporation sued repeatedly in products liability, a civil rights organization suing repeatedly to enforce desegregation of schools, or an environmental group which must sue again and again to redress environmental wrongs.

Our ruling is compatible with interpretations given to the federal rule governing attorney work product, Fed.R.Civ.P. 26(b)(3). This rule, which had its genesis in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has almost universally been held to apply to materials prepared in anticipation of previous, terminated litigation.[4]

In addition, the majority of state courts which have considered the question whether the work product privilege applies to material prepared for terminated litigation have held that the privilege is perpetual. For example, in *Kuiper v. District Court*, 632 P.2d 694 (Mont.1981), a state civil rule protecting the mental impressions and legal theories of an attorney was held not limited to materials prepared solely in the case for which discovery was sought. The court stated that attorneys should be allowed to gather data and commit their opinions to writing free of the concern that a future adversary could obtain these documents and use them against the attorney's client. This view is favored by a number of other state courts as well.[5]

For all these reasons, we hold that the work product privilege in Texas is of con-

---

**3.** Owens–Corning states that it is a defendant in 90,000 products liability cases nationwide.

**4.** *See, e.g., SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D.Conn.), *dism'd*, 534 F.2d 1031 (2d Cir. 1976) (plaintiff company in antitrust action sought to discover documents prepared by attorneys in defendant company's patent department in connection with an earlier patent infringement suit brought by defendant; court held the documents, once having been work product, did not automatically lose that protection in subsequent litigation and thus were not discoverable), *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir.1973) (work product documents prepared for a prior suit do not lose their qualified immunity from discovery under Rule 26(b)(3) upon termination of that litigation); *United States v. Leggett & Platt, Inc.*, 542 F.2d 655 (6th Cir.), *cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1976) (in antitrust suit brought by United States against a manufacturer, manufacturer was not entitled to discover work product documents relating to the government's investigations of other manufacturers; Rule 26(b)(3) held to extend to "work produced in anticipation of other litigation"); *In*

*re Murphy*, 560 F.2d 326 (8th Cir.1977) (United States sued corporations and sought to discover legal documents prepared by the companies' counsel in anticipation of previous litigation between the companies; Rule 26(b)(3) held to extend to documents prepared in anticipation of terminated litigation); *United States v. O.K. Tire & Rubber Co.*, 71 F.R.D. 465 (D.Idaho 1976) (tire company sued by United States sought to discover internal memoranda, summaries and analyses prepared by counsel in the Justice Department's antitrust division for earlier antitrust actions against other tire companies; work product privilege held to continue after litigation for which it was prepared has terminated); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26 (D.Md.1974) (qualified immunity of work product documents does not terminate when the lawsuit for which the documents were prepared terminates).

*But see, e.g., United States v. International Business Machs. Corp.*, 66 F.R.D. 154 (S.D.N.Y.1974); *Honeywell, Inc. v. Piper Aircraft Corp.*, 50 F.R.D. 117 (M.D.Pa.1970).

**5.** *See, e.g., American Bldgs. Co. v. Kokomo Grain Co.*, 506 N.E.2d 56 (Ind.App.1987) (trial court

tinuing duration. The trial court abused its discretion in ordering discovery of work product documents prepared for previous litigation.

■ Next we reach the issue whether Owens–Corning did indeed, as held by the trial court, waive its claimed privileges by asserting a "state of the art" defense. Under the doctrine of waiver by offensive use, a party may not "use one hand to seek affirmative relief in court and with the other hand lower an iron curtain of silence around the facts of the case." *Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex.1985). This court held in *Ginsberg* that since the plaintiff had sought affirmative relief against the defendant, she could not be permitted to deny him the benefit of evidence which would materially weaken her claims against him.

■ In balancing the overall risk and utility of a product, the fact finder in a products liability suit may consider the availability or nonavailability of feasible alternatives. While descriptive of the defendant's evidence in this regard, "state of the art" is not a true defense or bar to recovery in a products liability action. *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749 n. 3 (Tex.1980); J.H. EDGAR, JR. & J. SALES, 2 TEXAS TORTS AND REMEDIES § 42.01[2][D], at 42–9 (1991). Because plaintiffs concede that they must show Owens–Corning knew or should have known of its product's hazards at a time when a clear, cautionary statement of the exact nature of the dangers could have been given, *Bituminous Casualty Corp. v. Black & Decker Mfg. Co.,* 518 S.W.2d 868 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.), the defendant's proof is

better characterized as rebuttal evidence than as a defense. Accordingly, Owens–Corning's announced intent to use state of the art rebuttal evidence did not constitute a waiver of work product protection. The trial court's apparent belief that the state of the art issue raised a *Ginsberg* question is unfounded.

In sum, we hold that the trial court abused its discretion in ordering production of work product documents on the ground they were not prepared in anticipation of the instant litigation, and in holding that Owens–Corning's denial that it knew its products were dangerous resulted in a waiver of its work product privilege. We conditionally grant the writ of mandamus. The trial court is directed to review the requested documents to determine the applicability of the work product privilege consistent with this opinion. If the court fails to do so, writ will issue.

ordered production of work product "save and except those matters which are the work product of the attorneys on any and all cases that were … active at the time the information sought was determined;" appellate court reversed, holding work product protection is available to items prepared for prior litigation); *Beasock v. Dioguardi Enterprises, Inc.,* 499 N.Y.S.2d 560, 117 A.D.2d 1016 (N.Y.App.1986); (trial court ordered work product produced; appellate court held work product protection extends to work product prepared for other litigation); *Popelka, Allard, McCowan & Jones v. Superior Court,* 107 Cal.App.3d 496, 165 Cal.Rptr. 748 (1st Dist.1980) (in malicious prosecution

action against a law firm, the firm's interoffice memos concerning the prior action were held to be protected under the work product rule); *Fellows v. Superior Court,* 108 Cal.App.3d 55, 166 Cal.Rptr. 274 (2d Dist.1980) (plaintiffs in personal injury suit sought material compiled in prior insurance arbitration; court held documents therefrom maintained their privileged status). *See also Alachua General Hosp., Inc. v. Zimmer U.S.A., Inc.,* 403 So.2d 1087 (Fla.App. 1981) (trial court granted motion to compel work product of an investigator; appellate court reversed, holding work product retains its immunity in subsequent litigation, *citing Hickman v. Taylor* and *Duplan Corp., supra,* n. 5).