In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-12-00001-CV
_____

## IN RE COMMITMENT OF PATRICK DEWAYNE SMITH

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 11-07-07543-CV

## MEMORANDUM OPINION

The State of Texas filed a petition to civilly commit Patrick Dewayne Smith as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). A jury found Smith suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a). The trial court entered a final judgment and an order of civil commitment under the SVP statute. Smith raises six issues on appeal. We affirm the trial court's judgment.

## SUBJECT MATTER JURISDICTION

In his first issue, Smith contends the trial court lacked subject matter jurisdiction because Smith did not have an "anticipated release date" within the meaning of section 841.021 of the SVP statute. *See id.* § 841.021(a). The SVP statute "does not distinguish between those anticipated to be released on parole and those anticipated to be released unconditionally as a result of completion of their sentences." *In re Commitment of Evers*, No. 09-11-00430-CV, 2012 WL 6213508, at *2 (Tex. App.—Beaumont Dec. 13, 2012, pet. denied). Smith argues his case will not ripen until he has been released unconditionally, but "[w]hether the person is convicted of another offense after the State files a petition seeking civil commitment . . . or whether a person is released on parole or released unconditionally, there is nothing in [the SVP statute] that indicates the Legislature intended to divest the trial court of jurisdiction." *Id*. at *5. The trial court obtained subject matter jurisdiction over the civil commitment proceeding. We overrule issue one.

## PROTECTIVE ORDER

In issue two, Smith contends the trial court erred by allowing the State to refuse to answer certain requests for admission based upon a claim of attorney work product. We review the trial court's ruling for an abuse of discretion. *In re*

*Commitment of Perez*, No. 09-12-00132-CV, 2013 WL 772842, at *5 (Tex. App.—

Beaumont Feb. 28, 2013, pet. denied) (mem. op.).

The trial court granted a protective order as to the following requests for admission, each of which the State challenged as violating the work product privilege:

- The psychological assessment tools used by the experts for the State of Texas are unable to predict if a particular individual, such as the Respondent, is likely to commit a predatory act of sexual violence.
- The State of Texas has no evidence that the primary purpose of Respondent's qualifying sexual offenses was victimization.
- The psychological assessment tools used by the experts for the State of Texas are unable to predict if a particular individual, such as the Respondent, is likely to commit a future sexual act with the primary purpose of victimization.
- The psychiatrist(s) listed as an expert by the State of Texas is not licensed in forensic psychology.
- The psychiatrist(s) listed as an expert by the State of Texas is not board certified in forensic psychology.
- The Minnesota Sex Offender Screening Tool — Revised (MnSOST-R), used by the State's experts, is based on a sample size of less than 300 subjects.
- The MnSOST-R has been found to be an invalid tool to be used to measure rates of re-arrest.
- Upon release from custody, the Respondent will be required to register as a sex offender.
- The Respondent's entire adult criminal record is contained in the Respondent's DPS and FBI records, provided by the State of Texas to the State Counsel for Offenders.
- The State's experts cannot give a diagnosis of Paraphilia for the Respondent.

3

- The Multidisciplinary Team Psychologist did not give any diagnoses for sexual deviant illness to the Respondent.
- V codes are not actual diagnosis.
- The State did not offer the Respondent an opportunity to participate in Sex Offender Treatment during the first five years of his incarceration.
- The State did not offer the Respondent an opportunity to participate in Sex Offender Treatment during years six through ten of his incarceration.
- The State did not offer the Respondent an opportunity to participate in Sex Offender Treatment during years ten through twenty of his incarceration.
- The State did not offer the Respondent an opportunity to participate in Substance Abuse Treatment during the first five years of his incarceration.
- The State assigned the Respondent a minimum custody status during his incarceration at the Texas Department of Criminal Justice.
- Individuals civilly committed pursuant to Chapter 841 of the Texas Health & Safety Code have opportunities to engage in predatory acts of sexual violence.
- The conduct disorder testified to by State's Experts does not meet the requirements listed in the DSM-IV-TR.
- Respondent has protective factors that lower his rate of re-offending.
- Respondent has marketable job skills.
- Respondent has not had an opportunity to complete the Sex Offender Treatment Program prior to the filing of this lawsuit.
- The State is seeking to civilly commit Respondent prior to Respondent completing the Sex Offender Treatment Program.
- Research has established that Sex Offender Treatment lowers a person's risk to re-offend.
- Respondent will be on parole for 7 years after his release from the Texas Department of Criminal Justice.

4

The State argued that any information that counsel for the Special Prosecution Unit gained about a specific case is made in anticipation of litigation or trial. On appeal the State argues its responses would require it to divulge work product because only counsel for the Special Prosecution Unit is available to answer discovery. The work product rule shelters an attorney's mental processes, conclusions, and legal theories so the lawyer can analyze and prepare the case. *In re Bexar Cnty. Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex. 2007). The State presents no argument that the matters inquired into seek counsel's mental impressions, material prepared by counsel in anticipation of litigation, or communications made in anticipation of trial. *See* Tex. R. Civ. P. 192.5. Instead, the State appears to be arguing that answers to requests for admission are work product because the responses would be prepared by a lawyer. Like drafting pleadings, preparing discovery responses constitutes the practice of law. *See, e.g.,* Tex. Gov't Code Ann. § 81.101(a) (West 2013) ("[T]he 'practice of law' means the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court[.]"). The Special Prosecution Unit does not, as the State argues, possess a unique status. The State is not exempt from the rules of civil procedure but it enjoys the same procedural

5

rights as do other litigants. *See generally Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 301 (Tex. 1976) (considering statutory provision stating "[n]o admission, agreement or waiver, made by the Attorney General, in any action or suit in which the State is a party, shall prejudice the rights of the State.").

Considering the trial court ordered the State to answer other requests for admissions that are not at issue here, it is unlikely that the trial court issued the protective order on the ground asserted by the State on appeal. The State does not present any other reason why its responses would be work product. The State argues that the attorneys for the Special Prosecution Unit have no knowledge of the person referred for commitment until the referral is made, and that accordingly any knowledge counsel acquires results from the attorney's work on the case. But the State does not explain how it is possible for the State to prosecute, incarcerate, and evaluate persons for commitment without obtaining knowledge, through its agents and employees, of the factual matters referred to in the requests for admission. The work product privilege "does not extend to facts the attorney may acquire." *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 750 n.2 (Tex. 1991).[1] In such case, the State could make a reasonable inquiry and respond to the

---

[1] The State argues cases cited by Smith concerning the production of documents are inapposite in a case concerning requests for admission. The issue here is the scope of the privilege, not the scope of discovery.

6

requests. *See generally* Tex. R. Civ. P. 198.2(b); *see also* Tex. Health & Safety Code Ann. § 841.146(b) ("[A] civil commitment proceeding is subject to the rules of procedure and appeal for civil cases."). The trial court erred in granting a protective order.

Error in granting a protective order will result in the reversal of the judgment only if the error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case on appeal. *Perez*, 2013 WL 772842, at \*6; *see* Tex. R. App. P. 44.1(a). In *Perez*, we held that any error was harmless because Perez was able to obtain discovery through other means. *Perez*, 2013 WL 772842, at \*6. As was the case in *Perez*, in Smith's case the trial court's docket control order required production of the Multi-Disciplinary Team referral packet and Smith deposed the State's experts prior to trial. Smith had access to other sources to obtain the information he sought in his request for admissions; consequently any error in the trial court's decision to protect the State from responding to requests for admissions did not cause the rendition of an improper judgment or prevent Smith from presenting his case on appeal. *See* Tex. R. App. P. 44.1(a). We overrule issue two.

JURY INSTRUCTION

In his third issue Smith complains the broad-form jury question allowed the jury to find Smith to be a sexually violent predator without also finding that he has serious difficulty in controlling his behavior. The jury charge asked the jury, "Do you find beyond a reasonable doubt that [Smith] is a sexually violent predator?" The trial court included in the charge the definition of "sexually violent predator" found in the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.003(a). The jury charge defined "'behavioral abnormality'" as a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *See id.* § 841.002(2).[2]

Smith requested a jury charge that would have required the jury to find separately whether Smith (1) is a repeat sexually violent offender, (2) who suffers from a behavioral abnormality, (3) that makes him likely to engage in a predatory

---

[2] After Smith's trial, the Supreme Court noted that the statutory definition of "behavioral abnormality" "might more clearly be written: 'Behavioral abnormality' means a congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012), *cert. denied*, 81 U.S.L.W. 3658 (U.S. May 28, 2013) (No. 12-9719).

act of sexual violence. The trial court submitted the jury question this Court held should be submitted in civil commitment cases under the SVP statute. *In re Commitment of Myers*, 350 S.W.3d 122, 129 (Tex. App.—Beaumont 2011, pet. denied). We have repeatedly held that the trial court may within its discretion submit the controlling issue in a single question and instruct the jury regarding "behavioral abnormality" in a definition. *In re Commitment of Bath*, No. 09-11-00559-CV, 2012 WL 3860631, at *5 (Tex. App.—Beaumont Sept. 6, 2012, no pet.) (mem. op.); *In re Commitment of Elkins*, No. 09-10-00557-CV, 2012 WL 2849164, at *3 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.); *In re Commitment of Campbell*, No. 09-11-00407-CV, 2012 WL 2451620, at *7-8 (Tex. App.—Beaumont June 28, 2012, pet. denied) (mem. op.); *In re Commitment of Reed*, No. 09–11–00484–CV, 2012 WL 1072255, at *3 (Tex. App.—Beaumont Mar. 29, 2012, no pet.) (mem. op.).

Smith argues he cannot present his case on appeal because under the submitted charge the jury's answer could have reflected the jury's belief that Smith had a behavioral abnormality that caused him to be likely to reoffend sexually, or it could have reflected a belief that Smith had a behavioral abnormality, from which it necessarily follows that he is likely to reoffend sexually. In *Perez*, we held the trial court did not err in refusing to ask the jury separately whether the person has a

9

behavioral abnormality and whether the behavioral abnormality makes the person likely to engage in a predatory act of sexual violence. *Perez*, 2013 WL 772842, at *8. "The condition and predisposition are one and the same[,]" and "whether a person 'suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence' is a single, unified issue." *Bohannan*, 388 S.W.3d at 302, 303.

Smith's requested jury charge also included an instruction that the phrase "'affecting a person's emotional or volitional capacity' means serious difficulty in controlling behavior." The jury charge defined the terms that are defined in the SVP statute. "When a case is governed by a statute, as it is here, the jury charge should track the statutory language as closely as possible." *In re Commitment of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at *15 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.). Broad-form submission tracking the SVP statute accompanied by the statutory definition of "behavioral abnormality" in the charge "entails a determination that he has 'serious difficulty controlling behavior.'" *See In re Commitment of Almaguer*, 117 S.W.3d 500, 505-06 (Tex. App.—Beaumont 2003, pet. denied) (quoting *In re Commitment of Browning*, 113 S.W.3d 851, 862-63 (Tex. App.—Austin 2003, pet. denied)). We overrule issue three.

## LEGAL AND FACTUAL SUFFICIENCY

In issues four and five, Smith argues that the evidence is legally and factually insufficient to support a finding that Smith suffers from a behavioral abnormality. Under the SVP statute, the State must prove beyond a reasonable doubt that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a). The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). The statute defines "'behavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2).

Because the SVP statute employs a beyond-a-reasonable-doubt burden of proof, when reviewing the legal sufficiency of the evidence, we must assess all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied); *see also In re Commitment of*

11

*Brown*, No. 09-10-00589-CV, 2012 WL 4466348, at \*1 (Tex. App.—Beaumont Sept. 27, 2012, pet. denied) (mem. op.). The trier of fact, not the appellate court, fairly resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *Mullens*, 92 S.W.3d at 887; *Myers*, 350 S.W.3d at 130. In a factual sufficiency review of a SVP commitment case, we must weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied); *Myers*, 350 S.W.3d at 130.

"[P]roof of serious difficulty in controlling behavior" is required in order to civilly commit a defendant under a SVP statute. *See Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002); *see also Almaguer*, 117 S.W.3d at 505. The inability to control behavior "'must be sufficient to distinguish the dangerous sexual offender whose *serious* mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.'" *See Almaguer*, 117 S.W.3d at 504 (quoting *Kansas*, 534 U.S. at 413). Smith argues the evidence is legally insufficient to show that he has serious difficulty controlling his behavior, such that he displays an emotional or volitional impairment. He complains the diagnostic

12

criteria described by the State's testifying psychiatrist, Dr. Michael Arambula, do not relate to a person's ability to control his behavior, and the high risk of recidivism indicated by the actuarial instruments applied by the State's testifying psychologist, Dr. Jason Dunham, fail to distinguish Smith from a "'dangerous but typical recidivist'" as opposed to a sexually violent predator.

Dr. Jason Dunham, a forensic psychologist, testified that Smith "suffers from sexual deviance as well as a psychopathic personality disorder[]" that place him at high risk to commit a sexual offense. According to Dr. Dunham, Smith's behavioral abnormality was revealed through his commission of sexual assaults while living in the community and by his continued victimization of women while he was imprisoned by repeatedly exposing himself and masturbating in front of female guards. While serving his prison sentence for the sexual assaults, Smith was disciplined thirty-one times for "masturbating toward female correction officers . . . so that the officer sees it." That behavior is a criminal offense, indecent exposure. Smith offended against approximately twenty different victims in five prison units, with incidents recorded in 1996, 1997, 2003, 2004, 2007, and the most recent having occurred in 2010, approximately one year before the trial. In Dr. Dunham's opinion, Smith's behavior in prison shows he has difficulty controlling his behavior.

Dr. Michael Arambula, a forensic psychiatrist, testified that in determining whether a person has a behavioral abnormality it is important to look at how the person adjusts in prison. A person's failure to conform his behavior in the structured prison environment indicates his behavior will be worse in an environment lacking external controls. Smith's sexually aggressive actions toward female correction officers over a long period of time indicate his sexual deviance has been present for many years. Dr. Arambula stated that Smith's behavior while in prison showed that he has had difficulty controlling his behavior. In Dr. Arambula's opinion, Smith has a behavioral abnormality that affects his volitional or emotional capacity that predisposes him to commit a sexually violent offense to the extent that he is a menace to the health and safety of another person.

Smith argues that that "[a]t most, the State's evidence showed that Appellant committed two rapes in the past and that there is a decent chance that he will do it again." "Serious difficulty controlling behavior can be inferred from an individual's past behavior, his own testimony, and the experts' testimony." *In re Commitment of Washington*, No. 09-11-00658-CV, 2013 WL 2732569, at *6 (Tex. App.—Beaumont June 13, 2013, no pet. h.) (mem. op.). The jury could accept as credible the experts' testimony that Smith's sexual offenses and his behavior in prison demonstrate that he has serious difficulty controlling his behavior. Viewing

14

the evidence in the light most favorable to the jury's verdict, a rational jury could have found beyond a reasonable doubt that Smith has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. *See Mullens*, 92 S.W.3d at 887.

Smith argues the evidence is factually insufficient because Dr. Dunham stated the actuarial tests placed Smith at a high risk of recidivism but when the evidence is viewed in a neutral light Dr. Dunham could not demonstrate that Smith's risk is due to a lack of control. During cross-examination, Dr. Dunham conceded that the diagnostic manual states that no diagnosis in and of itself indicates whether a person will be able to control future behavior. He also stated that the actuarial tests are not designed to account for a person's ability to follow rules, but Dr. Dunham added that because disciplinary history and commission of sexual offenses in prison are indexed, the actuarial tests could be used for that purpose. Moreover, Dr. Dunham explained how Smith's offenses and prison behavior supported the high risk of recidivism reflected in his application of the actuarial instruments. Weighing all the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues four and five.

## CONSTITUTIONAL CHALLENGE

In a supplemental issue added after initial briefing in this appeal. Smith contends that "[t]he Texas Supreme Court's recent construction of the SVP civil commitment statute renders the statute facially unconstitutional under the Fourteenth Amendment's due process clause." Smith argues the Texas Supreme Court "has essentially eliminated the requirement of a mental illness[]" in a civil commitment case. *See generally Bohannan*, 388 S.W.3d at 306 (addressing the relevance of a "medical diagnosis" in determining whether a person is a sexually violent predator). The United States Supreme Court denied Bohannan's petition for certiorari after Smith filed his supplemental brief. *See Bohannan*, 81 U.S.L.W. 3658. Rejecting similar interpretations of *Bohannan* in other civil commitment cases, this Court has held "the Supreme Court in *Bohannan* did not 'change the statute or render it unconstitutional.'" *Washington*, 2013 WL 2732569, at *1 (quoting *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied)). We overrule Smith's supplemental issue and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 19, 2013
Opinion Delivered August 15, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.