**Affirmed and Memorandum Opinion filed March 29, 2022.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-20-00691-CV

**JETALL COMPANIES, INC., Appellant**

**V.**

**HOOVER SLOVACEK LLP, Appellee**

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-38738**

## M E M O R A N D U M   O P I N I O N

Jetall Companies, Inc. sued law firm Hoover Slovacek LLP for breach of contract, breach of fiduciary duty, and fraud. The trial court dismissed Jetall's breach of contract and breach of fiduciary duty claims based on the Texas Citizens Participation Act ("TCPA") and dismissed the fraud claim on Hoover Slovacek's summary judgment motion. Jetall appeals both rulings.

Regarding the TCPA ruling, Jetall argues in three issues that the act does not apply and that in any event it produced clear and specific evidence supporting each

element of its contract and fiduciary-duty claims. In a final issue, Jetall contends that it presented evidence raising a genuine issue of material fact precluding summary judgment on its fraud claim.

We affirm the trial court's judgment.

## Background

In 2010, Jetall's president and owner, Ali Choudhri, hired Hoover Slovacek to represent him as a defendant in a deed restriction lawsuit. After six months, Hoover Slovacek terminated its representation and eventually withdrew from the case. According to Hoover Slovacek, it never represented Choudhri again.

In 2016, Jetall wanted to purchase fifty percent of a title company, Declaration Title Company ("Declaration Title"), which was owned by Renee Davy and her then-husband, Todd Oakum. When negotiations began, Hoover Slovacek represented Davy.[1] Hoover Slovacek sent Jetall and Davy a waiver of conflict letter on June 29, 2016, which stated in relevant part:

> Presently, this firm represents Renee Davy in various legal matters. In or around 2010, this firm . . . previously represented Jetall Companies in a separate and distinct legal matter.[2] This firm's representation of Jetall Companies ended in or about late 2011 or early 2012. Although this could present a potential conflict of interest situation, it is my understanding that an adversarial relationship between Jetall Companies and Ms. Davy does not now exist but that, if one develops through this matter, you understand that we would

---

[1] Around this time, Davy and Oakum were in the midst of divorce proceedings. Hoover Slovacek represented Davy in the divorce.

[2] Although the waiver of conflict letter stated that Hoover Slovacek previously represented Jetall, we note that the 2010 engagement letter with Hoover Slovacek regarding the deed restriction suit identifies Choudhri, not Jetall, as the client. Further, the named defendant in the deed restriction suit was Choudhri. As discussed below, whether Hoover Slovacek's client in the 2010 deed restriction suit was Choudhri, Jetall, or both, is immaterial to our analysis.

2

have to withdraw from our representation with respect to this particular matter.

Both Jetall and Davy signed the waiver, representing that they consented to Hoover Slovacek's representation of Davy regarding the Declaration Title negotiations and waived any conflict of interest based on the circumstances stated in the waiver.

Later, Jetall requested Hoover Slovacek to withdraw as Davy's counsel. Michael Ballases, the Hoover Slovacek attorney for Davy's side of negotiations, accommodated Jetall's request and ended Hoover Slovacek's representation of Davy in the Declaration Title negotiations. According to Hoover Slovacek, Davy never sold her interest in Declaration Title to Jetall.

Approximately eight months later, Jetall filed suit against Davy and Oakum, among others, claiming that Davy and Oakum had in fact separately agreed to sell their respective ownership interests in Declaration Title to Jetall but breached those agreements and committed fraud in the process (the "Declaration Title Suit"). Hoover Slovacek, specifically attorney Ballases, represented Davy in that suit.

While the Declaration Title Suit was pending, Jetall filed a separate lawsuit against Ballases and Mike Johanson, an attorney with a different law firm, alleging that Ballases and Johanson conspired to and did tortiously interfere with the purported contract for the sale of Davy's and Oakum's ownership interests in Declaration Title to Jetall. Ballases and Johanson successfully moved to dismiss Jetall's claims against them under the TCPA, which the First Court of Appeals upheld. *See generally Jetall Cos., Inc. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at *1 (Tex. App.—Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.).

The Declaration Title Suit was tried to a jury, which found that Davy had not agreed to sell her interest in Declaration Title to Jetall. A week after the judge

3

signed the final judgment in that case, Jetall filed the present suit against Hoover Slovacek. Jetall asserted claims for breach of contract and breach of fiduciary duty. Jetall alleged that Jetall and Hoover Slovacek were parties to the conflict waiver Jetall signed during the negotiations with Davy and that the waiver contained a provision reserving Jetall's right to request that Hoover Slovacek withdraw from representing Davy. Jetall alleged that it invoked that contract right, and that Hoover Slovacek acknowledged it would withdraw. According to Jetall, however, Hoover Slovacek breached the contract and violated fiduciary duties by continuing to represent Davy despite its commitment to withdraw. In an amended petition, Jetall added a fraud claim, alleging that Hoover Slovacek fraudulently induced Jetall to sign the conflict waiver.

Hoover Slovacek moved to dismiss Jetall's contract and fiduciary-duty claims under the TCPA. Hoover Slovacek argued that the TCPA applied because Jetall's claims were based on or in response to the exercise of Hoover Slovacek's right to petition; that Jetall could not establish a prima facie case for its claims; and that, even if Jetall could prove a prima facie case, Jetall's claims were barred by the defenses of attorney immunity, waiver, and res judicata.

Jetall responded, arguing that the TCPA did not apply because Jetall's claims were not based on any specific communication. Jetall also submitted a declaration from Choudhri and other evidence in support of a prima facie case. The trial court granted Hoover Slovacek's TCPA motion, dismissed Jetall's contract and fiduciary-duty claims, awarded Hoover Slovacek its attorney's fees, and assessed sanctions against Jetall.

Hoover Slovacek also moved for summary judgment on Jetall's fraud claim, which the trial court granted, thus dismissing Jetall's suit in its entirety.

4

Jetall challenges both rulings on appeal.[3]

## A. TCPA dismissal of Jetall's contract and fiduciary-duty claims

### 1. *Applicable law and standard of review*

The TCPA protects citizens who associate, petition, or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them. *See In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a "special motion to dismiss . . . for any suit that appears to stifle the defendant's exercise of those rights." *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018) (quotation omitted).

Reviewing a TCPA motion to dismiss involves three steps. As a threshold matter, the movant must demonstrate that the TCPA applies. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). To meet this burden, the movant must show by a preponderance of the evidence that the legal action is based on or is in response to movant's exercise of the rights to associate, speak freely, and petition. *Id.* If the movant meets its initial burden, the burden then shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). Finally, if the nonmovant satisfies that requirement, the burden shifts back to the movant to establish as a matter of law any valid defense. *Id.* § 27.005(d). Whether the parties have met these respective burdens is a question of law that we review de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 373 (Tex. 2019).

Regarding the first step, only the right to petition is implicated here. As defined in the TCPA, the "exercise of the right to petition" means "a communication in or pertaining to . . . a judicial proceeding." Tex. Civ. Prac. &

---

[3] Jetall filed a notice of interlocutory appeal from the TCPA dismissal, and later filed an amended notice of appeal from the summary judgment ruling.

Rem. Code § 27.001(4)(A)(i). A "communication" is statutorily defined and includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) (statutory definition of "communication" covers "[a]lmost every imaginable form of communication, in any medium"). We construe the phrase "pertaining to" according to its ordinary meaning as relating directly to or concerning or having to do with. *See* Black's Law Dictionary (11th ed. 2019) ("pertain" means "to relate directly to; to concern or have to do with"). And courts have determined that "the ordinary meaning of 'a judicial proceeding'" is "an actual, pending judicial proceeding." *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied); *see also* Black's Law Dictionary (11th ed. 2019) (defining "judicial proceeding" as "any court proceeding; any proceeding initiated to procure an order or decree, whether in law or in equity").

2. *The TCPA applies to Jetall's contract and fiduciary-duty claims.*

Jetall's breach of contract claim is premised on Hoover Slovacek's "failure to cease representation of Davy" in violation of the conflict waiver. According to Jetall, once Jetall requested the firm to cease representing Davy "in the matters involving our mutual business dealings in Declaration Title," the conflict waiver required Hoover Slovacek to withdraw from representing Davy regarding the negotiations and also to decline representation of Davy in the Declaration Title Suit.

Regarding the breach of fiduciary duty claim, the attorney-client relationship giving rise to the alleged duty is Hoover Slovacek's provision of legal services to Choudhri and/or Jetall in connection with the 2010 deed restriction suit.

6

According to Jetall, Hoover Slovacek received in the course of that proceeding confidential information relevant to all of Choudhri's businesses, including Jetall. Jetall alleged that Hoover Slovacek violated its fiduciary duty when it subsequently represented Davy against Jetall's interests in the Declaration Title Suit.

In its motion to dismiss, Hoover Slovacek argued that the TCPA applies to both claims because Jetall asserted them in response to Hoover Slovacek's legal services rendered to Davy during the course and scope of the Declaration Title Suit. Its representation, according to Hoover Slovacek, constitutes an exercise of Hoover Slovacek's right to petition and is therefore protected under the TCPA. We agree.

Hoover Slovacek attached evidence to its motion that its representation of Davy included communications pertaining to the Declaration Title Suit. For example, Ballases averred in an affidavit that Hoover Slovacek, while engaged as Davy's counsel in the Declaration Title Suit, had multiple conferences and discussions with Davy and various witnesses; had multiple communications with all counsel of record in the case; prepared and filed various pleadings, answers, and motions; and attended a hearing. Jetall did not dispute that the identified communications occurred.

By any common understanding, Hoover Slovacek made communications in or pertaining to a judicial proceeding. Because the communications occurred during the Declaration Title Suit, which was "an actual, pending judicial proceeding," *Levatino*, 486 S.W.3d at 728, they constitute an exercise of the right of petition. *E.g.*, *Brenner v. Centurion Logistics LLC ex rel. Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *6 (Tex. App.— Dallas Dec. 14, 2020, pet. filed) (mem. op.) ("performing legal work on a lawsuit inherently involves communications"). Further, a plain reading of Jetall's petition

shows that the contract and fiduciary-duty claims are premised on Hoover Slovacek's legal representation of Davy in the Declaration Title Suit. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (basis of legal action is determined by plaintiff's allegations).

Jetall nevertheless urges that its legal action falls outside the parameters of the TCPA because Hoover Slovacek's invocation of the act rests on the exercise of *Davy's* right to petition, not the exercise of Hoover Slovacek's own right. But the supreme court and our sister court of appeals have rejected precisely the same argument. In *Jetall Companies*, Jetall argued that two attorneys (Ballases and Johanson) had invoked only their clients' TCPA rights, not their own, when the TCPA purportedly protects only the former. But the First Court of Appeals held that the attorneys' solicitation, negotiation, and finalization of an acquisition of Declaration Title by a third party as part of a litigation settlement, as well as the attorneys' execution of the written settlement agreement, constituted communications pertaining to a judicial proceeding. *See Jetall Cos.*, 2020 WL 6435778, at *3-4.

The court in *Jetall Companies* relied on *Youngkin v. Hines*. In that case, attorney Youngkin represented his clients in a property dispute against Hines, which the parties settled. *See Youngkin*, 546 S.W.3d at 678. In subsequent litigation, the allegations against Youngkin included that Youngkin read a Rule 11 agreement into the record at trial and helped his clients avoid compliance with the terms of the Rule 11 agreement. *Id.* Youngkin filed a motion to dismiss under the TCPA, arguing that his recitation of the Rule 11 agreement in open court was an exercise of the right to petition, as the TCPA defines it, and formed the basis for Hines's claims against him. *Id.* Hines countered that "an attorney speaking for a client in a courtroom is not exercising any personal First Amendment rights at all."

8

*Id.* at 680. The supreme court, adhering to the plain statutory definition, concluded that Youngkin had exercised the right to petition by making a statement in a judicial proceeding. *Id.* The court reasoned that:

> [T]he TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding. Youngkin's alleged liability stems from his dictation of the Rule 11 agreement into the court record during trial. By any common understanding of the words, he made a statement in a judicial proceeding.

*Id.*

Similarly, Hoover Slovacek's alleged liability stems from its legal representation of Davy during litigation involving Jetall. As referenced above, Hoover Slovacek filed pleadings in the case, made statements in court, and necessarily conferred with its client, Davy. These are communications made in or pertaining to a judicial proceeding. *See Jetall Cos.*, 2020 WL 6435778, at *3; *Brenner*, 2020 WL 7332847, at *6 (participation in calls regarding a summary judgment motion, revising a summary judgment motion, and holding discussions and meetings with various people about the case were all communications constituting right of petition).

Jetall also argues that Hoover Slovacek did not meet its TCPA burden because the firm failed to identify a specific communication that formed the basis of Jetall's suit. Jetall relies on *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966 (Tex. App.—Dallas Aug. 31, 2020, pet. denied), but *White Nile* is inapposite. In that case, the court held that silence or a failure to communicate cannot be the basis for dismissal under the TCPA. *Id.* at *6. Here, Jetall did not allege that Hoover Slovacek failed to communicate with Jetall regarding a potential conflict of

interest, but rather that Hoover Slovacek's affirmative conduct, which included communications pertaining to a judicial proceeding, constituted a breach of contract and fiduciary duties owed to Jetall. *See Brenner*, 2020 WL 7332847, at \*6 (distinguishing *White Nile* because evidence showed that evidence of attorney's legal work included specific communications pertaining to litigation: "These allegations of specific communications also distinguish this case from [*White Nile*] in which we could not discern any communications from the record.").

Applying the plain language of the TCPA to the circumstances of this case, we conclude that Hoover Slovacek proved by a preponderance of the evidence that Jetall's legal action is based on or in response to Hoover Slovacek's exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.001(1), (4)(A)(i); *see also Jetall Cos.*, 2020 WL 6435778, at \*3. The trial court did not err in concluding that the TCPA applies to Jetall's claims for breach of contract and breach of fiduciary duty.

### 3. *Jetall failed to establish a prima facie case*.

The next question is whether Jetall met its prima facie burden for its contract and fiduciary-duty claims. "A prima facie case is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (quoting *Lipsky*, 460 S.W.3d at 590).

#### a. Breach of contract

One of the elements of a breach of contract claim is proof of damages. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (a breach of contract action requires proof of four elements: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) "the

plaintiff sustained damages as a result of the breach"). In Jetall's response, it argued that, because Hoover Slovacek represented Davy in the Declaration Title Suit, "Jetall was required to incur additional attorneys' fees in attempting to disqualify one of Defendant's attorneys as a fact witness." For proof of this assertion, Jetall attached the unsworn declaration of Choudhri. Paragraph 7 of Choudhri's declaration provided, "As a result of Defendant's continued involvement as counsel for Davy, . . . I was forced to incur additional attorneys' fees and costs to attempt to disqualify [Hoover Slovacek] from participating in the case." Paragraph 8 referenced "pleadings" from Jetall's "motion practice to disqualify [Hoover Slovacek]" in the Declaration Title Suit. The attached pleading was a "bench brief," in which Jetall moved to exclude Ballases from testifying as a witness in the Declaration Title Suit, which Jetall argued would violate a disciplinary rule generally prohibiting attorneys from acting as fact witnesses.[4]

Hoover Slovacek objected to paragraphs 7 and 8, arguing that Jetall's assertions were contrary to the written record and violated the best evidence rule. Hoover Slovacek also pointed out that Jetall never moved to disqualify Hoover Slovacek from representing Davy in the Declaration Title Suit but instead sought only to exclude Ballases from testifying. The trial court sustained the objections and struck paragraphs 7 and 8 from Choudhri's declaration.

On appeal, Jetall purports to challenge the court's evidentiary ruling in a footnote, stating that the trial court abused its discretion in striking paragraphs 7 and 8 "because Choudhri clearly established that he was competent to testify regarding attorneys' fees expended in the Davy litigation and had personal knowledge of the same." Jetall provides no additional explanation or legal

---

[4] *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.08.

11

authority to support its argument. We determine that Jetall has waived any evidentiary challenge under the briefing rules. *See* Tex. R. App. P. 38.1(i).

Because the trial court struck paragraphs 7 and 8 of Choudhri's declaration, there was no evidence supporting the damages element of Jetall's breach of contract claim.[5] The trial court did not err in dismissing Jetall's breach of contract claim under the TCPA.

### b. Breach of fiduciary duty

Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages. *See, e.g.*, *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).

Jetall alleged that an attorney-client relationship existed between itself and Hoover Slovacek during the 2010-2011 time frame when the deed restriction litigation was ongoing. Choudhri asserts that he engaged Hoover Slovacek at that time for himself and Jetall and that he consulted with the firm on "various matters related" to Jetall. For purposes of our analysis, we accept as true Choudhri's assertion that Hoover Slovacek provided attorney services to Choudhri and Jetall in 2010 and 2011.

An attorney owes a fiduciary duty to a client when an attorney-client relationship is created. *See Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988); *Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 43 (Tex. App.—Houston [1st Dist.] 2005, no pet.). An attorney-client

---

[5] Jetall claims that the court only struck portions of Choudhri's declaration, not the attached exhibits to his declaration, which included the bench memo moving to exclude Ballases as a witness. We disagree with Jetall's position. Paragraph 8 expressly referred to, and incorporated, the bench-memo exhibit. By striking paragraph 8, the court struck any reference to the exhibit as well.

relationship only arises when an attorney agrees to render professional services to a client. *Greene's Pressure Treating*, 178 S.W.3d at 43. This relationship may be expressly created by contract or impliedly created through the parties' actions. *Id.* Generally, in the absence of an agreement to the contrary, the fiduciary duty created by an attorney-client relationship ends when the relationship ends. *See Lively v. Henderson*, No. 14-05-01229-CV, 2007 WL 3342031, at \*4 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, pet. denied) (mem. op.); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). It is undisputed that Hoover Slovacek's representation of Jetall, if any, ended in 2011.

Certain privileges and duties applicable to an attorney-client relationship, however, continue after the relationship's termination. *See, e.g.*, *Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751-52 (Tex. 1991) (orig. proceeding) (work-product privilege); *Md. Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982) (attorney-client privilege to refuse to disclose, and prevent others from disclosing, confidential communications continues for as long as client desires to assert it); Tex. R. Evid. 503(b). The general rule is that confidential information received during a fiduciary relationship may not be used or disclosed to the detriment of the one from whom the information is obtained, even after termination of the relationship. *See, e.g.*, *Bigham v. Se. Tex. Envtl., LLC*, 458 S.W.3d 650, 662-63 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

In its TCPA response, Jetall invoked the continuing duty of an attorney to refrain from disclosing a former client's confidential information, or using that information to the former client's detriment, as the basis for its fiduciary-duty claim. Jetall argued that Hoover Slovacek breached its fiduciary duty by representing Davy in the Declaration Title Suit because its representation enabled

13

the firm to utilize Jetall's confidential information against it. Jetall did not contend that Hoover Slovacek breached a fiduciary duty in any other respect.

We conclude that Jetall failed in its evidentiary burden on this claim because Jetall produced no evidence that Hoover Slovacek breached a duty of confidentiality. Choudhri stated in his declaration that, upon learning that Hoover Slovacek represented Davy during the Declaration Title Suit, he was "concerned with [Hoover Slovacek] using confidential information disclosed to [Choudhri] [sic] against [Choudhri] in litigation strategy and decision making." This is nothing more than mere speculation that Hoover Slovacek would use or disclose confidential information during the Declaration Title Suit and, as such, is not clear and specific evidence of a breach. *See, e.g.*, *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014) ("We regard evidence that creates a mere surmise or suspicion of a vital fact as, in legal effect, no evidence."); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) ("Proximate cause cannot be satisfied by mere conjecture, guess, or speculation."); *see also Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *14 (Tex. App.—Austin Feb. 17, 2017, pet. denied) (mem. op. on reh'g) ("Lake Travis's summary judgment responses, simply speculating that cross-appellees must have used Lake Travis's confidential information, did no more than create a mere surmise or suspicion of use or disclosure of Lake Travis's trade secrets.") (internal quotation omitted). Choudhri offered no evidence identifying any specific confidential information in Hoover Slovacek's possession, why it was relevant to the Declaration Title Suit, or that Hoover Slovacek in fact used any such information to Jetall's detriment in the suit.

In the absence of evidence showing a breach, Jetall failed to produce prima facie evidence in support of each element of its claim for breach of fiduciary duty.

The trial court did not err in dismissing this claim under the TCPA. We overrule Jetall's first issue.

## B. Summary judgment on Jetall's fraud claim

In its second issue, Jetall challenges the trial court's summary judgment ruling on its remaining fraud claim. We review a traditional summary judgment de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam).

A defendant who moves for traditional summary judgment on the plaintiff's claim must conclusively negate at least one element of the plaintiff's cause of action or conclusively establish each element of an affirmative defense to the claim. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). On review, we construe the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable juror could and disregarding contrary evidence unless a reasonable juror could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Jetall alleged that Hoover Slovacek "induced Jetall to execute the Waiver with no present intention to perform the obligation to perform the cessation of representation should Jetall request it"; that Jetall reasonably and justifiably relied on this material representation to Jetall's detriment; and that, but for the fraud, Jetall would have never signed the waiver.

Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its truth; (3) made with the intention that it should be acted on by the other party; (4) which the other party relied on; and (5) which caused injury. *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform. *Id.*

Relying on the conflict waiver, Jetall argues that Hoover Slovacek made a promise of future performance, without having any intent to actually fulfill that promise. The conflict waiver provided, in relevant part:

> [I]t is my understanding that an adversarial relationship between Jetall Companies and Ms. Davy does not now exist but that, if one develops through this matter, you understand that we would have to withdraw from our representation with respect to this particular matter. . . . [I]f at any time upon either of you[r] requests or at our request, anyone feels uncomfortable with respect to our representation of Renee Davy in this matter, we will withdraw from our representation in this matter and cease representing Renee Davy with respect to this particular matter.

Under Jetall's reading of the conflict waiver, Ballases promised to cease representation of Davy regarding the Jetall/Davy negotiations if requested *and* to withdraw from or decline any future representation if an adversarial relationship developed between Jetall and Davy. According to Jetall, the Declaration Title Suit was an adversarial relationship that developed out of the negotiations, thus barring Hoover Slovacek from representing Davy in that action. Jetall thus contends that Hoover Slovacek had no intention of fulfilling the promise contained in the conflict waiver because the firm represented Davy in the Declaration Title Suit.

16

Hoover Slovacek responds that under a plain reading of the conflict wavier it promised to withdraw upon request from the "particular matter" referenced in the document, namely, the "potential . . . business transaction" between Jetall and Davy. Further, it is undisputed that Hoover Slovacek did, in fact, withdraw and cease its representation in that matter upon Choudhri's request. Hoover Slovacek argues that the conflict waiver had no bearing on the firm's later representation of Davy in the Declaration Title Suit because that lawsuit did not exist at the time Jetall signed the waiver. Thus, Hoover Slovacek continues, the conflict waiver contained no promise of future performance that Hoover Slovacek failed to perform.

We agree with Hoover Slovacek. The conflict waiver contains Hoover Slovacek's unambiguous promise to withdraw from representation of Davy regarding Jetall's proposal to purchase Declaration Title and the associated negotiations. This is evidenced by the repeated references to "this matter" and "this particular matter," which refer to the "business transaction" between Jetall and Davy. Thus, the firm promised to withdraw from representing Davy as to any further negotiations to acquire Davy's interest in Declaration Title.

Hoover Slovacek proved that it complied with the conflict waiver. Hoover Slovacek relied on Ballases's email to Jetall that Hoover Slovacek immediately "cease[d] and desist[ed]" from representing Davy during the negotiations, as requested by Jetall. In response, Jetall offered no evidence that Hoover Slovacek had no present intention of fulfilling the terms of the conflict waiver at the time of execution. *See, e.g.*, *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (party's intent determined at time party made representation); *see also Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 388-

17

89 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (the fact that one party interprets provision differently is not evidence of falsity or intent not to perform).

Thus, Jetall did not produce evidence raising a genuine issue of material fact on one of the elements of its fraud claim, and the trial court did not err in granting Hoover Slovacek's motion for summary judgment. *See, e.g.*, *Fuller v. Wholesale Elec. Supply Co. of Houston, Inc.*, 631 S.W.3d 177, 188 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). We overrule Jetall's second issue.

## Conclusion

We affirm the trial court's judgment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Jewell, Bourliot, and Poissant.